1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Designer Import Group, LLC,              )    No. CV 05-1115-PHX-MHM
                                              )
10              Plaintiff,                     )    **ORDER**
                                              )
11   vs.                                       )
                                              )
12                                             )
     Bureau of Customs and Border Protection,)
13   Department of Homeland Security,          )
                                              )
14              Defendant.                     )
                                              )
15   _____

16

17        Plaintiff has filed a first amended complaint challenging Defendant's forfeiture

18   proceedings under 19 U.S.C. § 1608 and 5 U.S.C. § 702.  Plaintiff seeks declaratory and

19   injunctive relief and has invoked this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1355.

20   Plaintiff has filed a motion for relief from administrative forfeiture with supporting authority

21   (Doc. 23).  Defendant has filed a response in opposition (Doc. 26) supported by a separate

22   statement of facts.  (Doc. 27).  Plaintiff has filed a reply (Doc. 30) and objections to

23   Defendant's statement of facts.  (Doc. 31).  The Court heard oral argument on Plaintiff's

24   pending motion on March 13, 2006.  The Court enters this Order on Plaintiff's motion for

25   relief from administrative forfeiture.[1]

26   _____

27        [1]During the hearing, the Court inquired whether 18 U.S.C. § 983(e)(5), which
     provides for the filing of a motion for relief from forfeiture, applied in this case. Counsel for
28   Defendant seemed to indicate that § 983(e)(5) was not applicable. But see, Mesa Valderrama

1

I.

2

Background Facts.

3   During February and March 2004, United States Customs and Border Protection

4   ("CBP") seized eight shipments of alleged counterfeit goods bearing the trademarks of

5   Burberry, Prada, and Gucci.  Seizure notices for the eight shipments were sent to Plaintiff

6   Designer Import Group on March 11, 16, 25 and 30, 2004.  These seizure notices indicated

7   that the items were seized and subject to forfeiture under 19 U.S.C. § 1526(e) for a violation

8   of 15 U.S.C. § 1124 because the merchandise bore a counterfeit mark.  Each seizure notice

9   contained the following information:

10      Unless we receive from the trademark owner, within 30 days
        from the date of this letter, written consent to the importation,
11      exportation, entry obliteration or other appropriate disposition
        of the articles, or a petition for relief as described below, the
12      merchandise will be forfeited and disposed of in accordance
        with title 19, Code of Federal Regulations, section 133.52.

13

14   The seizure  notice further advised that Plaintiff "may petition for relief from the above

15   liability within 30 days from the date of mailing of this letter.  The petition need not be in any

16   specific form, but it should include all the facts, which you believe warrant relief from

17   forfeiture."  An address was provided for sending the petition.  Enclosed with each seizure

18   notice was a form entitled "Election of Proceedings Form" (referred to herein as "Election

19   of Proceedings" form).  The seizure notice contained the following information:

20      The enclosed Notice of Seizure and Information for Claimants
        explains your options with regard to the remission of the
21      forfeiture of seized property.  IF YOU DECIDE TO PETITION
        FOR RELIEF, YOU MUST CHECK THE FIRST BOX ON
22      THE ENCLOSED ELECTION OF PROCEEDINGS/WAIVER
        FORM INDICATING THAT YOU WISH THIS OFFICE TO
        CONSIDER YOUR PETITION ADMINISTRATIVELY.

23

24   (Doc. 27, Exhibit 1a)(emphasis in original).  The seizure notice provided a name and phone

25   number to whom questions could be addressed.

26

27   v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005)(indicating that § 983(e)  is "the
     exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture
28   statute").

The Notice of Seizure and Information for Claimants Form provided information for potential claimants.  The Election of Proceedings form advised the potential claimant to read the Notice of Seizure and Information for Claimants Form before filling out the Election of Proceedings form. The Election of Proceedings form contained four paragraphs with a blank check box next to each.  The options set forth on the Election of Proceedings form were indicated as follows:

> I REQUEST THAT CUSTOMS AND BORDER PROTECTION CONSIDER MY PETITION OR OFFER ADMINISTRATIVELY.
>
> I REQUEST THAT CUSTOMS AND BORDER PROTECTION BEGIN ADMINISTRATIVE PROCEEDINGS TO FORFEIT THE PROPERTY.
>
> I ABANDON THE PROPERTY AND I REQUEST THAT CUSTOMS AND BORDER PROTECTION BEGIN ADMINISTRATIVE PROCEEDINGS TO FORFEIT THE PROPERTY.
>
> I REQUEST THAT CUSTOMS AND BORDER PROTECTION REFER THE CASE FOR COURT ACTION.

(id.).

With respect to the first option that CBF consider the petition or offer administratively, the following discussion was included in relation to that option:

> That document is attached.  By making this request, I understand that I am giving up my right to (1) begin administrative forfeiture proceedings immediately, as provided by title 19, United States Code (U.S.C.), section 1607 and title 19, Code of Federal Regulations (CFR), section 162.45; or (2) immediate referral of the case to the U.S. Attorney for court action, as provided by 19 U.S.C. 1608 and 19 CFR 162.47. If administrative forfeiture has begun, it will be stopped until my petition or offer is considered.  However, I understand that *at any time* I can request, in writing, that you begin administrative forfeiture proceedings, and you will continue to consider my petition or offer.  I also understand that *at any time* I can file a claim and cost bond with you, and Customs and Border Protection consideration of my petition or offer will stop and the case will be sent to the U.S. Attorney for court action.

(id.)(emphasis in original).

The Notice of Seizure and Information for Claimants Form contained information for seeking administrative relief by filing a petition with the Fines, Penalties & Forfeitures

Officer. The Notice of Seizure and Information for Claimants Form also contained information for filing a claim and cost bond.

On March 9, 2004, David Plasters, then counsel for Plaintiff, wrote to the CBP Fines, Penalties and Forfeitures ("FP&F") office renewing his request to inspect the seized merchandise. Mr. Plasters in this March 9th letter also requested to be provided with a copy of the test results from which it was determined that the seized items were counterfeit. In a letter dated March 18, 2004, the agency stated that the testing materials "may be requested through Freedom of Information Act (FOIA) procedures." On April 7, 2004, CBP-FPF allowed Plaintiff's counsel to physically inspect the seized merchandise.

By letter dated May 7, 2004, the FP&F officer notified Plaintiff's counsel Mr. Plasters that forfeiture proceedings had been initiated on the eight seizures as no valid petition had been filed and that the merchandise would become forfeited on June 4, 2004, stating in relevant part as follows:

> Please be advise [sic], forfeiture proceedings have been initiated on the above seizures due to the fact that a valid petition has not been filed. **Merchandise will become forfeited on June 4, 2004** (copy attached).

(id., Exhibit 4)(emphasis added).

Beginning on May 14, 2004, the Notice of Seizure and Intent to Forfeit was published for three consecutive weeks, with the goods to be declared forfeited on June 4, 2004, unless a claim and cost bond were filed within 20 days of first publication.

On June 2, 2004, Plaintiff's counsel requested an extension of time to file a petition for relief. On June 4, 2004, the FP&F officer responded in writing to Plaintiff's request for an extension of time. The FP&F officer declined the request, stating as follows:

> Unfortunately, we are unable to extend or halt our administrative forfeiture action because the merchandise became forfeited on June 4, 2004. Our office sent timely seizure notices and initiated administrative forfeiture on May 7, 2004 after never receiving a response.

Even though the goods had been forfeited, the FP&F officer allowed Plaintiff an additional thirty (30) days from the date of the June 4th letter to gather information to support

1    its claim for relief from seizure.  Plaintiff was advised in the letter that if the agency rendered

2    a decision in petitioner's favor the forfeiture would be reversed.  The letter further stated that

3    if the agency denied Plaintiff's petition for relief, Plaintiff would still be "given the right to

4    file an administrative supplemental petition in accordance with 19 CFR § 171.62."

5          On June 7, 2004, the FP&F officer signed the Declaration of Administrative Forfeiture

6    for each of the eight seizures that were forfeited on June 4, 2004.

7          On June 24, 2004, attorney Peter Quinter on behalf of Plaintiff filed a petition for

8    relief asserting that the goods were gray market merchandise.  According to Plaintiff,

9    invoices were provided from the respective trademark owners (i.e., Prada, Gucci and

10   Burberry) and their authorized distributors, with respect to the merchandise.  Plaintiff

11   contends that these documents establish that Plaintiff purchased the seized merchandise

12   directly from the trademark owners or from an authorized licensee of the trademark owners

13   and therefore the merchandise is legitimate.

14         On July 28, 2004, the FP&F officer issued her decision denying relief from forfeiture.

15   The denial letter indicated that the decision was based on evidence that showed that the

16   goods were counterfeit and therefore gray market regulations did not apply.

17         On August 27, 2004, attorney Quinter on behalf of Plaintiff filed a supplemental

18   petition.  Plaintiff submitted an addendum to its supplemental petition on September 7, 2004.

19   On September 28, 2004, the FP&F officer notified Mr. Quinter that Plaintiff's supplemental

20   petition had been referred to the National Seizures and Penalties Officer in Chicago, Illinois.

21   On December 4, 2004, Plaintiff filed a second addendum to its supplemental petition in which

22   it attached letters from several of its overseas suppliers and manufacturers indicating that they

23   were authorized licensees of Burberry, had manufactured the goods and then sold them to

24   British Fashion or DCD (Thailand) who then sold them to the Plaintiff.

25         On January 5, 2005, Plaintiff's counsel submitted a Freedom of Information Act

26   ("FOIA") request for all documents in the possession of the FP&F, CBP, in Nogales, Arizona,

27   for all of the seizures.  On January 27, 2005, the FOIA officer for the Tucson Field Office for

28   CBP responded to the FOIA request and stated that the matter was pre-decisional before the

1    Office of Rulings and Regulations.  The letter referred to FOIA exemptions under 5 U.S.C.

2    §§ 552(b)(5), (b)(7)(A), and indicated that Mr. Quinter could resubmit the request once the

3    matter was decided.

4           On February 4, 2005, Mr. Quinter on behalf of Plaintiff submitted a money order in

5    the amount of $5,000, as a claim and cost bond and requested that the case be referred to the

6    U.S. Attorney's office for judicial forfeiture. On February 25, 2005, the FP&F officer

7    forwarded to Mr. Quinter the decision of the National Seizures and Penalties Officer denying

8    Plaintiff's supplemental petition. On February 25, 2005, the FP&F officer returned the $5,000

9    check to Mr. Quinter, explaining that the bond was untimely as the forfeiture had been

10   completed on June 4, 2004.

11          On April 13, 2005, Plaintiff commenced the present federal lawsuit including an

12   emergency motion for a temporary restraining order and an order to show cause why a

13   preliminary injunction should not issue in an effort to stop the destruction of the merchandise.

14   The parties by agreement have submitted the matter for decision based on the briefing.

15                                          II.

16                              Standard of Review.

17          Title 19, United States Code, § 1608, governs the statutory procedures for obtaining

18   a judicial hearing for cases arising under the Customs laws. Corresponding Customs

19   regulations state that in order to obtain a judicial hearing, a person "shall file a claim to such

20   property with the Fines, Penalties, and Forfeitures Officer within 20 days from the date of the

21   first publication of the notice prescribed in 19 C.F.R. § 162.45." See 19 C.F.R. § 162.47(a).

22   However, if no such claim and bond is filed within twenty days, the property is

23   administratively forfeited. Lizenberger v. United States, 89 F.3d 818 (Fed. Cir. 1996)(citing

24   19 U.S.C. § 1609). Following the administrative forfeiture, the only option available to a

25   claimant is to seek remission or mitigation from the agency, "which is purely a matter of

26   administrative grace." Menkarell v. Bureau of Narcotics, 463 F. 2d 88, 93 (3d Cir. 1972).

27          This Court lacks jurisdiction to review the merits of a completed administrative or

28   nonjudicial forfeiture decision.  United States v Eubanks, 169 F.3d 672 (11th Cir. 1999).

1   Administrative decisions denying remission or mitigation are not subject to judicial review
2   on the merits. See Tourus Records v. DEA, 259 F.3d 731 (D.C.Cir. 2001).  Therefore, once
3   a final administrative decision is obtained, generally a claimant cannot challenge that decision
4   in the courts except under very limited circumstances. The court's review "is limited to
5   determining whether the agency followed the proper procedural safeguards" in forfeiting the
6   property.   See Scarabin v. Drug Enforcement Admin., 919 F.2d 337, 338 (5th Cir.
7   1990)(noting that review of administrative forfeiture is limited to review of the procedure);
8   see, e.g., United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000); Boero v. Drug
9   Enforcement Admin., 111 F.3d 301, 304-05 (2d Cir. 1997).  Equitable jurisdiction may be
10  appropriate if the claimant's "failure to properly seek legal relief resulted from errors of
11  procedure and form or the government's own misconduct."  In re Matter of $67,470.00, 901
12  F.2d 1540, 1545 (11th Cir. 1990).

III.

Discussion.

15      Plaintiff contends that the administrative forfeitures were constitutionally and
16  procedurally deficient based on the following grounds. Plaintiff claims it was misled by
17  certain of the language used on the Election of Proceedings form and that the agency's refusal
18  to produce any documentation in response to Plaintiff's January 5, 2005 FOIA request
19  amounts to a due process violation because it undermined its ability to prepare petitions for
20  remission, mitigation and reconsideration.  Plaintiff also argues that the merchandise was not
21  "counterfeit", as determined by the administrative proceedings, but rather legitimate "gray
22  market" merchandise.  Defendant argues in response that it complied with the necessary
23  constitutional and procedural requirements and that this Court lacks subject matter jurisdiction
24  to set aside the forfeitures or to review the merits of the forfeitures.

25      In this case, it is undisputed that seizure notices for the eight shipments were sent to
26  Designer Import Group on March 11, 16, 25 and 30, 2004.  The seizure notices stated that the
27  items were seized and subject to forfeiture under specific identified statutory provisions based

28

1    on violation of 15 U.S.C § 1124 because the merchandise bore counterfeit marks.  The seizure

2    notices also contained information regarding a claimant's election of remedies.

3            Plaintiff contends, however, that in <u>Gete v. Immigration & Naturalization Service</u>, 121

4    F.3d 1285, 1294 (9th Cir. 1997), the Ninth Circuit held  that in order to satisfy due process, it

5    was not enough for the seizing agency simply to have provided the property owner with

6    adequate written notice of the seizure and an election of remedies.  Plaintiff contends that

7    <u>Gete</u> holds that the seizing agency is also required to (1) disclose the factual basis for the

8    seizure and the specific statutory provision allegedly violated; (2) furnish copies of the

9    evidence relied upon by the agency in support of its forfeiture decision; and (3) provide a

10   statement of the agency's reasons for denying relief.

11           In <u>Gete</u>, vehicles were seized by the Immigration and Naturalization Service for

12   allegedly transporting unauthorized aliens into the United States.  The claimants sued the INS,

13   alleging that its forfeiture procedures violated the Fourth, Fifth, and Eighth Amendments to

14   the U.S. Constitution.  The Ninth Circuit held in <u>Gete</u> that the district court had subject matter

15   jurisdiction over the claimants' action challenging the procedures as unconstitutional even

16   though the merits of the INS determination were unreviewable.  <u>Id</u>., 121 F.3d at 1291.  <u>See</u>,

17   <u>Handa v. Crawford</u>, 312 F. Supp. 2d 1367, 1372 (W.D.Wash. 2004)(discussing holding in

18   Gete).  The appellate court rationalized that nothing in the statutory and regulatory scheme

19   suggested that, in choosing the administrative option instead of posting bond and invoking

20   judicial forfeiture, the claimants received notice that they were waiving their right to challenge

21   the lawfulness of the process itself.  The Court of Appeals further indicated that the claimants

22   had presented substantial due process claims regarding the failure of the INS procedures to

23   give sufficient notice of the bases for its seizures, the refusal to allow access to the seizing

24   officers' reports and documents in its internal files, and the failure of the INS to provide an

25   explanation of the reasons for its forfeiture decisions.  <u>Id</u>., at 1299.

26           As Defendant points out in its briefing, in <u>Gete</u> the Ninth Circuit specifically stated in

27   a footnote that it did not have under consideration whether the notice furnished under the

28   customs laws comports with due process and in fact it reserved judgment on that question.

Id., at 1298  n.20.  The appellate court in Gete did observe that the "[c]ustoms regulations ... require the government to provide ... notice containing both the provisions of the law alleged to have been violated and a description of the specific acts or omissions forming the basis of the alleged violation."  Id., at 1298, n. 19.  This Court does not construe Gete as holding that all three of the identified conditions must be met to satisfy due process in the context of the civil administrative forfeitures at issue in this case.  For example, in United States v. Clagett, 3 F.3d 1355, 1357 (9th Cir. 1993), the Ninth Circuit in remanding for further proceedings on the adequacy of notice in administrative forfeiture directed that the issue should be considered in light of  Sarit v. U.S. Drug Enforcement Admin., 987 F.2d 10 (1st Cir. 1993), and cases cited therein.  In Sarit, the First Circuit discussed the notice/due process issue regarding administrative forfeiture proceedings and noted that "courts are reluctant under Mullane to extend a notifying party's duty beyond initial satisfactory notice" and that "[o]nly exceptional circumstances would compel [the court] to so extend the DEA's duty, absent indication that it knew or should have known that the notice would be ineffective."  Id., at 13-15.

In the context of civil forfeitures, "individuals whose property interests are at stake due to government actions are entitled to notice of the proceedings and an opportunity to be heard."  Mesa Valderrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005)(citing Dusenbery v. United States, 534 U.S. 161, 167-68 (2002)).  "The notice necessary to satisfy due process requires only that interested persons be given 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  Mesa Valderrama, 417 F.3d at 1196 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  As further observed in United States v. Franklin, 897 F. Supp. 1301 (D. Or. 1995),

> In the case of administrative forfeitures, the United States must also comply with the statutory requirements set out in 19 U.S.C. § 1607.  This section requires notice to be sent to each party who appears to have an interest in the seized article.  In addition, the government shall publish notice for three successive weeks. Federal regulations require such publication to be in a newspaper which publishes in the Customs district and the judicial district in which the property was seized.  19 C.F.R. § 162.45.

1  Id., at 1303.

2       In the instant case, the letters accompanying the seizure notices sent by CBP to
3  Plaintiff stated that a claimant may petition for relief from liability within 30 days from the
4  date of mailing of the letter.  The last of the seizure notices were mailed on March 30, 2004,
5  making the deadline for filing a petition for relief April 29, 2004.  During this 30-day period,
6  Plaintiff's counsel requested and was granted the opportunity to inspect the seized
7  merchandise.  However, Plaintiff did not file a petition by the April 29, 2004 deadline.  As
8  mentioned above, the information provided to Plaintiff with the notices of seizure included
9  a discussion of the Election of Proceedings.

10      Additional notice was provided approximately 38 days after the last of the seizure
11 notices were mailed.  Specifically, on May 7, 2004, CBP Fines Penalties and Forfeitures
12 notified Plaintiff's counsel that the agency had initiated administrative forfeiture proceedings
13 as no valid petition had been filed.  The FP&F officer also stated that the merchandise would
14 become forfeited on June 4, 2004.  Although Plaintiff attempts to argue that this letter did not
15 advise that it needed to file a claim and cost bond, such argument is specious in light of the
16 clear notification that the merchandise would become forfeited on June 4, 2004, thereby
17 indicating that the administrative forfeiture would be completed by that date.  Moreover, a
18 copy of the notice that was to be published was attached to the May 7, 2004 letter.  This notice
19 stated that anyone claiming the merchandise must file a claim and post the prescribed bond
20 in the amount noted within 20 days from the first publication of the notice and unless such
21 claim was filed the merchandise would be declared forfeited on June 4, 2004. Plaintiff
22 therefore had been notified that the forfeiture process was ongoing and of its consequences
23 if no timely claim and cost bond was filed.  The twenty day period for filing a claim and cost
24 bond expired on June 4, 2004 at which time the forfeiture was completed.

25      Plaintiff requested an extension of time to file a petition for relief after the period for
26 petitioning had ended. The FP&F officer notified Plaintiff in a letter dated June 4, 2004 that
27 the agency was unable to extend or halt its administrative forfeiture action because the
28 merchandise became forfeited on June 4, 2004, noting that the agency had sent timely seizure

notices but had never received a response. The agency in an act of administrative grace allowed Plaintiff thirty additional days to gather evidence in support of a claim for relief from seizure.  The letter to Plaintiff in this regard was explicit that the forfeiture was already complete.  Plaintiff's subsequent petition and supplemental petition for relief were denied. Plaintiff attempted to file a claim and cost bond eight months later on February 4, 2005 and the agency returned the money and bond as untimely.

Against this background, Plaintiff contends it was denied due process when CBP refused to accept its claim and cost bond by pointing to the language in the CBP Election of Proceedings form which states "at any time, I can file a claim and cost bond." This language must be read in the context of the forfeiture proceedings, however.  The agency put Plaintiff on notice of the various stages of the proceedings and advised Plaintiff that certain action needed to be taken and the time for taking action.  Plaintiff was notified in the information included with the notice of seizure letters that it could file a claim and cost bond.  Plaintiff was notified again in the May 7, 2004 letter and the notice to publisher that was attached to this letter.  This letter indicated that the forfeiture would be complete on June 4, 2004. Plaintiff appears to recognize this fact when it states in its briefing that Customs had represented to it that "a claim and cost bond could be filed at 'any time' during the pendency of the administrative proceedings."  (Doc. 23, at p. 11; Doc. 30, at pp. 2 & 5).  In this case, Plaintiff was represented by counsel during the proceedings leading to the forfeiture of the merchandise.  The statutes and regulations were available to counsel who "had only to look to these sources." Sarit, 987 F.2d at 15(rejecting plaintiffs' argument that statement that claim and cost bond could be filed "at any time" to refer the matter to the U.S. Attorney for judicial proceedings was deliberately misleading or confusing where plaintiffs were represented by counsel who "is charged with knowledge of the law, and that knowledge is imputed to plaintiffs").

Even after Plaintiff was notified that the goods had been forfeited on June 4, 2004, Plaintiff waited until February 4, 2005 to attempt to file a claim and cost bond. In fact, Plaintiff's Election of Proceedings Form was signed on June 18, 2004, a full two weeks after

1   Plaintiff had been informed that the forfeiture would not be halted due to the fact that it was

2   already complete.  Plaintiff was on clear notice prior to June 4, 2004 that the failure to file a

3   claim and cost bond before June 4th would result in administrative forfeiture.

4        Along this same line, Plaintiff's FOIA request for all seizure documents was not

5   submitted until January 5, 2005, some seven months after the merchandise was forfeited.  The

6   FOIA request also was not made until Plaintiff had filed its petition and its supplemental

7   petition.  Plaintiff did not renew its FOIA request after receiving notice that its supplemental

8   petition had been denied.

9        The instant case is similar in some respects with the circumstances presented in Mesa

10  Valderrama v. United States, 417 F.3d 1189 (11th Cir. 2005).  In Mesa  Valderrama, U.S.

11  Customs officials in Miami, Florida, seized a check en route from the Isle of Man to Bogota,

12  Colombia for alleged violation of the money laundering statutes.   An FP&F Officer sent

13  written notice of the check's seizure to the check's intended recipient in Colombia. The notice

14  of seizure included similar information as in the instant case.  Claimant Mesa responded to

15  Customs' letter and selected option 1, the filing of an administrative petition to contest the

16  forfeiture. Mesa thereafter filed his administrative petition claiming that the funds in the

17  accounts were not the proceeds of unlawful activity and requesting the return of the check.

18  After some correspondence and conversation, Mesa and a Customs Agent allegedly agreed

19  to a settlement in which a portion of the proceeds were to be returned to Mesa.  Id., at 1192-

20  93.

21        Sometime later, CBP notified Mesa by letter that his request for administrative relief

22  from forfeiture had been denied and that administrative forfeiture proceedings would be

23  initiated thirty days from the date of the letter.  Believing that a settlement had been reached,

24  Mesa  disregarded  this  and  subsequent  letters  advising  him  that  summary  forfeiture

25  proceedings would be initiated unless certain action was taken within the time periods

26  specified.   Specifically, Mesa was notified that within 20 days from the time CBP first

27  published notice of the proceedings, Mesa could elect to have the matter referred to the federal

28

1   court for judicial forfeiture proceedings.  In accordance with Customs' procedures, the check

2   was administratively forfeited.  Id., at 1193.

3          Mesa obtained new counsel and requested that Customs reinstate the case and refer it

4   to the United States Attorney for judicial forfeiture proceedings. Customs notified Mesa's

5   attorney of the details of the forfeiture proceedings and explained that there was no basis to

6   reinstate the case.  Some six months later, Mesa filed a motion to set aside administrative

7   forfeiture in the district court. The district court granted the government's motion to dismiss

8   the case, concluding in part that it lacked subject matter jurisdiction over Mesa's challenges

9   to the legitimacy of the administrative forfeiture proceedings.  The district court found that

10  Mesa could not contest the agency's administrative forfeiture declarations because he had

11  received adequate notice but had failed to timely file a claim requesting initiation of a judicial

12  forfeiture proceeding.  Id., at 1193-94

13         The Court of Appeals for the Eleventh Circuit affirmed, holding that the district court

14  had not erred in refusing to exercise its equitable jurisdiction in the case.  The Eleventh

15  Circuit concluded that Mesa had "received all the required notice ... in sufficient time to

16  challenge the forfeiture proceeding" and that "[i]t is inappropriate for a court to exercise

17  equitable jurisdiction to review the merits of a forfeiture matter when the petitioner elected

18  to forego the procedures for pursuing an adequate remedy at law."  Id., at 1197.

19         As in Mesa Valderrama, Plaintiff received all the required notice in sufficient time to

20  challenge the forfeiture proceeding but failed to initiate procedures for pursuing an adequate

21  remedy at law. Unlike in Gete, Plaintiff did not elect the administrative remedy without

22  sufficient notice that by doing so it would forego any right to a judicial remedy.  Rather,

23  Plaintiff in the instant case failed to timely take any action or pursue any remedy despite the

24  fact that its counsel had been given the opportunity to inspect the merchandise a full three

25  weeks before the time to petition had ended.  Defendant points out in its briefing that had

26  Plaintiff filed a petition prior to April 29, 2004, forfeiture proceedings would have been

27  suspended due to the unique aspect of the procedures followed by CBP in administrative

28  forfeitures.  As explained by the Defendant, CBP allows a petitioner to receive a decision on

1  a petition without foregoing the right to contest the forfeiture in court.  See Gete, 121 F.3d at

2  1292 n.12 (recognizing Sarit-type analysis in cases where a claimant failed to pursue in a

3  timely fashion any remedy available to him despite constitutionally and statutorily adequate

4  notice).

5          The merchandise in this case has been declared administratively forfeited.   The effect

6  of such a declaration of forfeiture "shall have the same force and effect as a final decree and

7  order of forfeiture in a judicial forfeiture proceeding in a district court of the United States."

8  See 19 U.S.C. § 1609(a) and (b). Plaintiff's argument that the agency used a flawed method

9  by which to determine that the goods were counterfeit is an argument going to the merits of

10 the  forfeiture  and  is  therefore  inappropriate  for  review  in  the  district  court.

11         The Court concludes that it lacks subject matter jurisdiction to consider Plaintiff's

12 claims.  Plaintiff's motion for relief from administrative forfeiture is denied.

13         **Accordingly**,

14         **IT IS ORDERED** that Plaintiff's motion for relief from administrative forfeiture (Doc.

15 23) is denied.

16         DATED this 27th day of March, 2006.

_____
Mary H. Murguia
United States District Judge